PEOPLE *v.* HOXZEY.

CRIMINAL LAW—PHYSICIANS AND SURGEONS—LICENSES—UNLAWFUL
PRACTICING OF MEDICINE.

> In prosecution for unlawfully practicing medicine, where evidence shows that licensed physician examined, diagnosed, and prescribed for professed patient, fact that defendant was present, assisted physician, and disagreed with his diagnosis did not render him guilty of offense charged; especially where patient was informed that defendant was not physician.

Appeal from Recorder's Court of Detroit; Skillman (W. McKay), J. Submitted October 13, 1932. (Docket No. 195, Calendar No. 36,344.) Decided December 6, 1932.

Harry M. Hoxzey was convicted of practicing medicine without license to do so. Reversed.

*Carl M. Weideman* (*Hyman Kramer,* of counsel), for appellant.

*Paul W. Voorhies,* Attorney General, *Harry S. Toy,* Prosecuting Attorney, and *Duncan C. McCrea* and *Edmund E. Shepherd,* Assistants Prosecuting Attorney, for the people.

WIEST, J. Defendant was charged with unlawfully practicing medicine, by professing to diagnose, treat, cure, and relieve Otto Fischl of disease and ailment, by attending and giving him advice and prescribing and giving him drugs and medicine, and in holding himself out to the public as a physi-

On right of unlicensed physician to act as employee of licensed one, see annotation in 44 L. R. A. (N. S.) 1089.

cian, without registration or license as such. The evidence failed to establish the charges. Defendant was convicted and sentenced to imprisonment for six months, and prosecutes this appeal. Defendant's motion for a new trial pointed out that the proofs did not establish any violation of law, and the motion should have been granted.

In behalf of defendant it was claimed at the trial that he controls a formula for the cure of cancer, and that persons of means established a free clinic in charge of a physician, and defendant acted as technician only. The testimony in support of the prosecution was given by Mr. Fischl, an investigator for the department of health, and we state the substance thereof. Mr. Fischl visited the place of the clinic and inquired for "Dr. Hoxzey," and was informed that "Mr. Hoxzey was not a doctor." Defendant asked him what his trouble was, and he stated that he did not know.

"He told me to lay on the chair and when I sat on the chair he started to unbutton my shirt and I had to finish it, and there was another gentleman with him, Dr. Van Hyning. At that time I don't know Dr. Van Hyning at all, and Mr. Hoxzey put his hand on my stomach and rubbed his hand towards the left side, and Dr. Van Hyning done the same thing, and Mr. Hoxzey told Dr. Van Hyning to take my pulse. Dr. Van Hyning took my pulse and said to Mr. Hoxzey, 'He has a pulse in a perfect condition,' and then Mr. Hoxzey looked at Dr. Van Hyning and walked away from me probably two or three steps and didn't say anything. Later on Dr. Van Hyning said something in Latin, and I heard Mr. Hoxzey tell him something that sounded like Latin and I asked Dr. Van Hyning to explain it better. * * * And Dr. Van Hyning said, 'I am

sorry to tell you you have something far more worse than cancer. You have tumors around your intestines.'

"*Q.* How long did this examination that the defendant Hoxzey gave you—how long did it take?

"*A.* About 15 minutes.

"*Q.* After Hoxzey was through examining you, what did he do?

"*A.* He walked away and said to Dr. Van Hyning, he said, 'No, it is a cancer.'

"*Q.* What did Dr. Van Hyning say?

"*A.* Dr. Van Hyning didn't say anything.

"*Q.* What did Hoxzey do then, anything?

"*A.* He walked away from me, walked to some kind of a glass cover, and put his hand in some kind of a tin box and pulled out some pills and put them in a yellow envelope and gave them to Dr. Van Hyning, and he wrote down how to use the pills.
*   *   *

"It was perhaps two or three minutes after I buttoned my shirt that I received the pills and walked out, when another gentleman stopped me and said, 'You are going to get some medicine.' I waited probably 15 minutes, when I received a bottle containing a black liquid from another gentleman, whom I don't see in court. I pulled out my pocketbook and offered the defendant money, and he said, 'It doesn't cost you anything now—we will find out later how you feel—come back next week.' *   *   *

"The pills were given to me by Dr. Van Hyning. When I went to the clinic I didn't know that Dr. Van Hyning was a registered and licensed physician, but I do now. He diagnosed my case and said something in Latin. I said, 'I can't explain that to my wife. I don't understand Latin.' What Mr. Hoxzey said to Dr. Van Hyning, I haven't the least idea, as I couldn't understand it. That is the reason I asked him what was the trouble. Dr. Van Hyning diagnosed the case as something far worse than

cancer. Mr. Hoxzey didn't tell me what was wrong with me then, nor did he tell me at any time. Mr. Hoxzey didn't tell me—Dr. Van Hyning told me what was wrong.  *  *  *  To the best of my knowledge there was nothing to indicate to me that Mr. Hoxzey was a doctor.''

We have here a case where a licensed physician examined, diagnosed, and prescribed for a professed patient. This being true, it negatives guilt on the part of defendant. True, defendant was present, assisting the physician, and disagreed with the diagnosis of the physician, but such did not render him the physician in the case. Defendant's presence was explained by the fact that he claimed to have a remedy for cancer and was interested in the diagnosis of the case by a regular physician and treatment thereof. The physician, according to the testimony, had charge of the case, and the assistance given the physician by defendant did not constitute practicing the profession of a physician. The testimony negatived the holding out of defendant to the public as a physician.

The charges were not established, and the conviction is reversed, and defendant discharged.

CLARK, C. J., and McDONALD, POTTER, SHARPE, NORTH, FEAD, and BUTZEL, JJ., concurred.